**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

MICHAEL D. MARLIN
Reg. # 08387-003                                                          PLAINTIFF


V.                                    2:07CV00052 BSM/HDY


JILL DUBE-GILLEY, FCI-Forrest City;
and EDNA PRINCE, FCI-Forrest City                                        DEFENDANTS


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge

Brian S. Miller.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection is

to a factual finding, specifically identify that finding and the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States

District Court Clerk no later than eleven (11) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

Plaintiff, an inmate at the Beaumont-Low Federal Correctional Institution (formerly housed at the Federal Correctional Institute in Forrest City) filed this action *pro se* pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In an Order (docket entry # 60) adopting in part the undersigned's findings and recommendations, the Court dismissed Plaintiff's Americans with Disabilities Act and Rehabilitation Act claims. However, "in light of defendants' objections," which included argument and evidence relating to a grievance which appeared not to have been fully exhausted, the Court remanded the remaining claims to the undersigned for reconsideration of the issue of exhaustion of administrative remedies.

Both parties have been allowed full opportunity to object to the district court's Order and

2

otherwise seek reconsideration of that decision.  Plaintiff has also filed a "Motion to Amend" (docket entry #65) which called the Court's attention to several other grievances he had filed that he contended amounted to exhaustion of his "available" remedies.  The parties were then directed to respond to the question raised by the Court on the issue whether Plaintiff had successfully exhausted his claims in three other grievances raised in Plaintiff's Motion.

Both sides having had adequate opportunity to respond and object, the Court finds that the concerns raised by the district court judge with regard to the Plaintiff's failure to exhaust any administrative remedies are well taken.    In the absence of any fully exhausted administrative remedies related to his claims against either Defendant, Plaintiff's Complaint should be dismissed.

### A.  Factual Background

In the instant case, Plaintiff alleged that "on or about November 1, 2004," Defendant Dube-Gilley, his Unit Manager at the FCI- Forrest City unit, assigned him to work at a position that exceeded his physical capabilities following a change in his work restriction status by Defendant Dr. Prince.  He stated that Defendant Prince denied him medical treatment and pain relief for ear and sinus infections, resulting in a fall that caused him further injury, and that the two conspired to deprive him of appropriate work restrictions.

Defendants' objections to the Partial Recommended Disposition pointed out that Grievance # 345061, the informal portion of which was begun on April 1, 2004, and covered his complaints of increased pain, his contention that Dr. Prince had failed to issue work restrictions consistent with his level of injuries, and his desire to be seen by an orthopedic specialist or a neurosurgeon for his pain, was initiated before the acts or omissions complained of in the instant case.

Plaintiff has responded by producing five additional grievances which he contends should

satisfy the exhaustion requirement:   Grievance #360443, dated November 15, 2004, raised a multitude of claims, including retaliation in the form of denial of medical care, medications, copies, and stamps;   Grievance #362968, initiated on December 17, 2004, sought transfer to a medical facility because he was physically unable to work and claimed retaliation for his filing of previous grievances; Grievance #377373, begun informally on April 19, 2005, alleged a conspiracy between Defendants Dube-Gilley and Prince to force him into a work assignment that he was not physically able to perform; Grievance #378985, reporting safety violations at the laundry department, where Plaintiff was assigned to work; and Grievance #406642, dated March 10, 2006, raised his claim that Captain Marques and Assistant Warden Thompson (who are not Defendants in this action) subjected him to cruel and unusual punishment in the form of a work assignment out of doors.

## B.  Standard of Review

Because the Defendants' Motion to Dismiss remains pending, the Court will re-state the standard of review it is applying . When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must view the complaint in the light most favorable to the non-moving party and may dismiss the complaint only if no relief can be granted under any set of facts that could be proven consistently with the complaint's allegations. *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Here, however, the Government relied on the declarations of Bureau of Prisons employees that introduced matters outside of the Complaint. Therefore, this Court converts Defendants' motion to dismiss with regard to exhaustion of administrative remedies into a motion for summary judgment.   *See* FED.R.CIV.P. 12(b)(6)("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219 (8th Cir. 1999). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. " 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *DePugh v. Smith*, 880 F.Supp. 651, 656 (N.D.Iowa 1995)(quoting *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. *Celotex Corp.*, 477 U.S. at 322-23; *see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995).

### C. Analysis

Section 1997e(a), which was enacted in 1996 as part of the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997 *et seq.*, provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This statute requires that prisoners must exhaust all of their available administrative remedies before they can bring a civil rights action based on the conditions of their imprisonment. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)("Thus federal prisoners suing under *Bivens*, must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). A prisoner must exhaust his administrative remedies before bringing a federal civil rights action, regardless of the nature of his claim or the relief he is seeking. *See Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion under the Prison Litigation Reform Act requires "proper exhaustion," which "demands compliance with an agency's deadlines and *other critical procedural rules* because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386-87, 165 L.Ed.2d 368 (2006)(emphasis added). In other words, "proper exhaustion" of administrative remedies, "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 2385 (other quotation and marks omitted).

As to the purpose of this requirement, the Eighth Circuit Court of Appeals has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones*, 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford*, 126 S.Ct. at 2385 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures.'")(quoting *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)); *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998)(quoting 141 CONG. REC. H1472-06, *H1480 (daily ed. Feb. 9, 1995))("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'").   However, under the Prison Litigation Reform Act, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on defendant, and not a matter of subject matter jurisdiction.  *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007)(citing *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 919-922, 166 L.Ed.2d 798 (2007); *see also Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344 at *1 (8th Cir. Aug.17, 2007)(unpub. *per curiam*)(plaintiff's claim that defendants withheld grievance and appeal forms raised factual question whether administrative remedy process was "available").

7

The Bureau of Prisons provides a comprehensive administrative remedy procedure for federal inmates seeking to address grievances relating to their confinement. Under the Administrative Remedy Program, the inmate must first present his concern informally to an appropriate staff member, who must attempt to resolve the concern.  *See* 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, within "20 calendar days following the date on which the basis for the Request occurred," the inmate must file an Administrative Remedy Request by submitting a BP-9 form to the staff member designated by the Bureau of Prisons, generally the warden.  *See* 28 C.F.R. §§ 542.14(a), (c)(4). If dissatisfied with the warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form within 20 days of the date the warden signs the response. *See* 28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the inmate must file an appeal with the Office of General Counsel by submitting a BP-11 form within 30 days of the Regional Director's response. *Id.*

## 1.      Grievance #345061

Plaintiff's Amended Complaint[1] (docket entry #5) names November 1, 2004 as the earliest date that injury occurred.  "On or about November 1, 2004, [Defendant Dube-Gilley] assigned Plaintiff to a job above his physical limitations," based on new less-restrictive limitations imposed by Defendant Price.  Grievance #345061 (docket entry #58-2) is dated April 1, 2004 and was fully resolved (through the level of National Inmate Appeals Administrator Harrell Watts) on November 19, 2004.  It being beyond the limits of time and space for Plaintiff to have grieved on April 1, 2004 events that would not transpire until November 19, 2004, Plaintiff cannot be deemed to have fully

---

[1]  Pursuant to the screening function of 28 U.S.C. § 1915A(a), the Court required Plaintiff to submit an Amended Complaint when it was determined that his original Complaint (docket entry #2) failed to allege facts sufficient to determine whether he stated a claim for relief.

exhausted his administrative remedies against the Defendants in this grievance.   Defendants are correct on this point, and will be entitled to have the claims against them dismissed unless Plaintiff can demonstrate the existence of specific facts in the record that create a genuine issue for trial, *i.e.*, rebut their affirmative defense and show that he has otherwise exhausted his claims against them.

### 2.   Grievance #360443

On November 15, 2004, Plaintiff drafted a two-page single-spaced attachment to a BP-8 that outlined a series of issues: disagreement with Dr. Prince about his treatment, medication, and work assignments; denial of stamps and copies; retaliation for filing of grievances, and more.   The "administrative remedy coordinator" at FCI-Forrest City rejected this document on December 3, 2004, because it was not on the proper form and did not appear to have been presented to a counselor for an attempt at informal resolution.   Plaintiff was told that he could re-submit with the proper forms within ten days of the date on the rejection notice.   There is no documentation indicating that Plaintiff appealed this rejection.   Therefore, this grievance cannot amount to exhaustion of administrative remedies in the instant case.

### 3.   Grievance # 362968

The forms in support of Grievance #362968 begin on December 17, 2004; there are no informal resolution documents accompanying Plaintiff's exhibits related to this grievance, although the Warden's Response refers to three BP-8½ "Attempt at Informal Resolution" forms that accompanied the appeal to her office.   In his "Request for Administrative Remedy" Plaintiff claims that his BP-8 forms have gone unanswered, he has been retaliated against for filing grievances, he is physically unable to work, and he needs to be transferred to a medical facility.   In her Response, the Warden noted that Plaintiff had not made any particular request to be ruled upon, but she noted

that the medical professionals had found that Plaintiff's physical condition had improved to the point that he would benefit from a job assignment of approximately one hour per day.   Plaintiff submitted an appeal of this report to the regional administrative remedy coordinator on January 25, 2005, but it was returned to him, dated February 2, 2005, rejected on the grounds that it was not accompanied by the necessary copies of the BP-9 or the Warden's Response.  A handwritten notation in the upper lefthand corner reads: Copy received in unit 2/8/05.  Plaintiff was advised that he could resubmit his appeal with the proper documents within ten days of the date of the rejection notice.

Instead, Plaintiff waited until July 29, 2005, when he submitted another "appeal" to the regional coordinator beginning "This is my 2nd attempt at getting a response from Central on grievance # 362968 . . . Please answer ASAP" [ellipses in original].  This too was rejected, both for having failed to include the copies of the BP-9 or the Warden's Response, and as untimely.   This grievance has not been fully exhausted, either.

### 4.   Grievance #377373

Grievance # 377373, initiated on the informal level on April 19, 2005, claimed that Plaintiff had been placed in a hazardous job with insufficient safety precautions, in retaliation for naming the Defendants as parties in a previous civil rights lawsuit.  The Unit Manager signed off on the Informal BP-8 on April 22, 2005, and Plaintiff submitted a formal Administrative Remedy request to the FCI-Forrest City Coordinator.  However, despite obviously having the results of the Informal Resolution, Plaintiff apparently did not present these documents with his BP-9, as it was rejected on May 25, 2005, the day of its receipt in the office, for failure to submit the necessary accompanying documents.  Furthermore, Plaintiff did not take advantage of the ten days he was given to re-submit the forms.  It appears to the Court that it is  possible that Plaintiff did not include the BP-8 because

it was completed on April 22, 2005, more than a month before his BP-9 was finally submitted to the Administrative Remedy Coordinator's office at the same unit.  In any event, this Grievance is not fully exhausted.

### 5.   Grievance #378985

Plaintiff initiated Grievance #378985 on May 11, 2005, after the resolution of his Informal BP-8 in Grievance #377373 but before he submitted his Request for Administrative Remedy.  It too addressed Plaintiff's concerns about safely working in the laundry, but the responsible parties named are  E. Raper, Mrs. Mayfield, B. Totten, C. Goetz.  He then adds in his BP-9 that Defendant Dube-Gilley backdated her response to Plaintiff's Informal Request BP-8, therefore rendering his BP-9 untimely.  Plaintiff's BP-9 Request for Administrative Remedy was rejected, as untimely, but it does not appear that Plaintiff appealed that rejection.  Plaintiff has written a great many objections on the document, but these may merely be for the Court's benefit.  In any case, none of the issues raised in this Grievance are the same as those submitted to the Court in Plaintiff's complaints against Defendants Dube-Gilley and Prince and cannot serve to satisfy the exhaustion requirements of the Prison Litigation Reform Act in this lawsuit.

### 6.   Grievance #406642

Lastly, Plaintiff has submitted Grievance #406642, which complains that he was "tortured" by Captain R. Marquez and Associate Warden G. Thompson, who assigned him to sit outside Thompson's office during the day, from June 14 throughout the summer months of 2005.[2]  Plaintiff

---

[2]  Plaintiff filed a separate action against Marquez and Thompson, case no. 2:05CV00146 SWW (E.D. Ark.), *aff'd* case no. 06-1809 (8th Cir. Feb. 20, 2007), *cert. denied* case no. 07-6320 (Nov. 19, 2007), which was also dismissed for failure to exhaust administrative remedies.  This case was filed on June 27, 2005, and dismissed on February 23, 2006.

did not file his Request for Administrative Remedy BP-9 until March 10, 2006.   Instead of the untimeliness obvious on the face of the request, the Administrative Remedy Coordinator at the Oakdale Federal Correctional Institute, where Plaintiff was then housed, returned it to him for failing to also submit proof of attempt at informal resolution.   Plaintiff continued to appeal this grievance from Oakdale, Louisiana to Beaumont, Texas, but even assuming *arguendo* that the issues were exhausted, they have nothing to do with the claims before the Court here, and cannot serve to satisfy the exhaustion requirement for this case.

## IV.  Conclusion

Plaintiff has argued several times in his pleadings that further appeals would have been pointless: "[I]t is cut in stone, if the institutional level denied the grievance, Regional and Central followed suit and would never, even override institutional level" (docket entry #65).   But an inmate is not excused from failing to exhaust his administrative remedies just because he "subjectively believed that there was no point in his pursuing administrative remedies.   *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002).

The Eighth Circuit has explained that it is mandatory to dismiss claims on which a prisoner has not exhausted his administrative remedies. *See Johnson*, 340 F.3d at 627 ("If exhaustion was not completed at the time of filing, dismissal is mandatory [under 42 U.S.C. § 1997e(a) ]."). For all of these reasons, this Court finds that Plaintiff has not exhausted all available administrative remedies as to any of his constitutional claims, that future attempts by Plaintiff to exhaust his administrative remedies at the Bureau of Prisons on these claims would be untimely and are therefore procedurally

defaulted, and therefore recommends that his *Bivens* action be DISMISSED WITH PREJUDICE.[3]

For all these reasons,

IT IS THEREFORE RECOMMENDED that Defendants' Motions to Dismiss (docket entries ## 28 and 39) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

DATED this ___23___ day of January, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3]  *See Fargas v. U.S.*, No. 06-3267, 2008 WL 698487 at *14, slip op. (D. Minn. Mar. 13, 2009)(dismissing with prejudice Plaintiff's unexhausted *Bivens* claims as so untimely they are now foreclosed to administrative review), citing *Johnson v. Jones*, 418 F.3d at 1156 (noting the "policies favoring exhaustion," held that the Prison Litigation Reform Act contains a procedural default component where an inmate fails to avail himself in a timely fashion of the institution's administrative process); *Wardrick v. Marberry*, No. CIV.A. 06-216-ERIE, 2007 WL 4180693 at *6 (W.D.Pa. Nov.20, 2007)("Plaintiff has failed to exhaust his administrative remedies. In addition, Plaintiff is foreclosed from re-submitting his appeal to the General Counsel's Office because he failed to do so within the required time period. As a result, Plaintiff has procedurally defaulted on his claim and this case should be dismissed.").